UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TERRY SMITH,

       Plaintiff,                        Case Number: 08-CV-14314

v.                                          JUDGE PAUL D. BORMAN
                                            UNITED STATES DISTRICT COURT

GRATTAN FAMILY ENTERPRISES, LLC,
d/b/a UNI-BOND BRAKE, LLC

       Defendant.
_____/


**OPINION AND ORDER  DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

Now before the Court is defendant Grattan Family Enterprises, LLC's ("Defendant's") October 9, 2008 Motion to Dismiss plaintiff Terry Smith's ("Plaintiff's") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 4).  A hearing on this matter was held on February 11, 2009.  For the following reasons, the Court DENIES Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) and 12(b)(6).

**I.    BACKGROUND**

This action arises from Plaintiff's allegations that Defendant wrongfully terminated his employment in violation of the Americans with Disabilities Act of 1990, 81 Stat. 602, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Age Discrimination in Employment Act of 1987, 104 Stat. 327, as amened, 29 U.S.C. § 621 *et seq.* ("ADEA").

Plaintiff is a U.S. citizen residing in Ferndale, Michigan.  (Compl. ¶ 1).  Defendant, doing business as Uni-Bound Brake, LLC is a Michigan limited liability company with its principal place

of business in Ferndale, Michigan.  (*Id*. ¶ 2).

Plaintiff was a twenty-year employee of Uni-Bond Brake, Inc. ("Oldco") (*Id*. ¶ 10). Sometime in March 2007, Oldco transferred Plaintiff from his position as a welder to a position as a press operator.  (*Id*. ¶ 11).  Following this transfer, Plaintiff informed his supervisor, James Evans, on several occasions that he was experiencing significant pain in his hip due to bone deterioration. (*Id*. ¶ 12).  Because Plaintiff was experiencing a great deal of pain if he stood for long periods of time and had difficulty working longer than his eight hour shift, Plaintiff asked Mr. Evans and Ms. Lisa Moore, the director of human resources, if he could be transferred to a position, including welder, that did not require him to stand all day long.  (*Id*. ¶ 13–14).

On May 11, 2007, Oldco and a related company called Uni-Bond Lighting & Safety Products, LLC sold substantially all of their business assets to Defendant.  That same day, Oldco provided a letter to Plaintiff informing him that, effective immediately, his employment with Oldco was terminated because Oldco had been bought out by new management.

On September 5, 2007, Plaintiff timely filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, which was assigned charge number 471-2007-03605 ("Original Charge").

On February 4, 2008, Plaintiff's counsel sent a letter to the EEOC, stating that it had recently come to the attorney's attention that Uni-Bond Brake, LLC, the successor company to Oldco should be named in the charge and requested that the EEOC agent contact her regarding the matter.

On February 12, 2008, allegedly after a conversation with the EEOC agent, Plaintiff's counsel again sent a letter to the EEOC ("February 12, 2008 Letter").  The body of the letter provides as follows:

>  My client, Mr. Terry M. Smith, filed a charge with the EEOC on July 20, 2007, alleging that his former employer Uni-Bond Brake, Inc., had discriminated against him on the basis of age and disability status. It has recently come to my attention that Uni-Bond Brake, LLC, an assumed name of Grattan Family Enterprises, LLC is the assumed name of Uni-Bond Brake, Inc. Please amend our charge to include Grattan Family Enterprises, LLC d/b/a Uni-Bond Brake, LLC. The corporate address for Uni-Bond Brake, LLC is 2187 Cameo, Troy, Michigan 48098. Mr. Michael B. Grattan is listed as the registered agent. In addition, please forward the requisite documents for Mr. Smith to authorize to his charge. Thank you.

(Def.'s Br. Ex. B).

On March 13, 2008, the EEOC agent sent a letter to Plaintiff's counsel, indicating that the letter was in reference to their recent conversation, in which they discussed amending the charge to include Grattan Family Enterprises, LLC as a respondent. (*Id*. Ex. C, March 13, 2008 Letter). To ensure proper handling of the matter by the EEOC, the letter instructed Plaintiff's counsel to "[r]eview the enclosed charge form, sign, and date, have notarized and return in the enclosed envelope." (*Id*.)

Plaintiff submitted another notarized charge ("Amended Charge"), this time including Defendant as a respondent, on March 24, 2008, which is 318 days after Oldco terminated Plaintiff. The EEOC received the verification on March 27, 2008.

The EEOC mailed Plaintiff a Notice of Right to Sue ("Right to Sue Letter") on July 9, 2008. According to the Complaint, Plaintiff received the Right to Sue Letter on July 14, 2008.[1]

On October 9, 2008, Plaintiff filed an action in this Court alleging violations of the ADA and

---

[1] Plaintiff attached a Right to Sue Letter for EEOC charge number 471-2007-03613 to the Complaint. This Right to Sue Letter pertains to Plaintiff's charge against his union. Defendant acknowledges that both the proceedings against the union and Oldco/Defendant were dismissed by the EEOC, and the EEOC mailed Right to Sue Letters in both proceedings on July 9, 2008. In addition, Defendant assumes that for the purposes of his motion, Plaintiff received both letters on July 14, 2008. Therefore, the Court finds no issue with Plaintiff's failure to attach the correct Right to Sue Letter to his Complaint.

3

ADEA. Defendant now moves this Court to dismiss Plaintiff's claims because (1) Plaintiff has not properly exhausted his administrative remedies and (2) Plaintiff has failed to state discrimination claims under the ADA and ADEA upon which relief can be granted.

## III.   ANALYSIS

### A.   Standard of Review

Defendant's motion to dismiss Plaintiff's complaint due to the untimely amendment to Plaintiff's underlying EEOC charge is brought under Rule 12(b)(1) and 12(b)(6). Defendant brought its motion to dismiss Plaintiff's complaint for failing to state an ADA or ADEA claim under Rule 12(b)(6).

#### 1.   Rule 12(b)(1) Standards

Pursuant to Rule 12(b)(1), dismissal of an action is appropriate where a court does not enjoy subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attach the factual basis for jurisdiction, in which case the trial court must weigh the evidence." *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007) (citation omitted). Having invoked the jurisdiction of the federal courts, "the plaintiff bears the burden of proving that jurisdiction exists." *Id*. Thus, when evaluating a motion to dismiss pursuant to Rule 12(b)(1), the United States Court of Appeals for the Sixth Circuit has instructed:

> In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (internal citations omitted).

### 2. Rule 12(b)(6) Standards

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

To survive a motion to dismiss, the "[f]actual allegations contained in [the] complaint must 'raise a right to relief above the speculative level.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)). This "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 127 S. Ct. at 1974). A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

Rule 12(b) provides that if "matters outside the pleadings are present to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in

5

Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." But, in addition to the allegations and exhibits of the complaint, a court may also consider "matters of public record" in deciding a motion to dismiss under Rule 12. *New Eng. Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Kramer v. Time Warner, Inc*., 937 F.2d 767, 774 (2d Cir. 1991). Also, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," . . . "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196 (citations omitted).

Here, the parties attach several documents to their pleadings. All of the documents are either public documents or undisputedly authentic documents essential to Plaintiff's claims, especially as to the issue of whether Plaintiff exhausted his administrative remedies. Therefore, the Court need not, and does not, treat Defendant's motion as one for summary judgment.

  **B.**  **Timeliness of Plaintiff's EEOC Filings**

Defendant initially contends that Plaintiff failed to exhaust his administrative remedies. Before an aggrieved employee may file suit under the ADA or the ADEA, the employee must first file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000-5(e)); 29 U.S.C. § 626(d). "Filing a charge with the EEOC and obtaining a right to sue letter are prerequisites to filing a Title VII suit in federal court." *Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 771 (E.D. Mich. 2002)(citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029 (6th Cir. 1998)). In deferral states like Michigan, claimants have 300 days after the alleged unlawful act to file the

charge provided that they have instituted proceedings with a state or local agency with authority to grant or seek relief from such a practice. *See* 42 U.S.C. § 12117 (incorporating 42 U.S.C. § 2000-5(e)); 29 U.S.C. § 626(d)(2); 29 C.F.R. § 1626.7. "Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *EEOC v. United Parcel Service, Inc.*, 249 F.3d 557 (6th Cir. 2001) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980); *Dixon v. Anderson*, 928 F.2d 212, 218 (6th Cir. 1991)).

Plaintiff alleges that Defendant discriminated against him on May 11, 2007 when Defendant chose not to hire Plaintiff. (Pl.'s Compl. ¶¶ 16–18, 22). Under the ADA and ADEA, Plaintiff had 300 days from May 11, 2007 in which to file a charge of discrimination against Defendant.

Here, Plaintiff filed a discrimination charge on September 5, 2007 against Oldco. The parties do not dispute that this charge was timely. After Plaintiff realized that Defendant should have been named as a respondent in Plaintiff's original filing, Plaintiff sought to have Defendant added to the charge by contacting the EEOC by letter on February 4 and February 12, 2008—269 days and 277 day, respectively, after May 11, 2007. *See* http://cgi.cs.duke.edu/~des/datecalc/datecalc.cgi. Plaintiff filed the Amended Charge, which added Defendant as a respondent, on March 24, 2008—318 days after May 11, 2007. *See id.* Defendant, therefore, argues that Plaintiff failed to meet the 300 day filing deadline.

### 1. Timely Filing as a Jurisdictional Prerequisite

Contrary to Defendant's assertion, the 180 and 300-day time period in which to file a claim under Title VII are not to be characterized as jurisdictional, but rather as a "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309

(6th Cir. 2000), *cert. denied*, 533 U.S. 951 (2001) (applying the holding in *Zipes* to the ADA); *Wright v. State of Tenn.*, 628 F.2d 949, 953 (6th Cir. 1980) (same for ADEA).

Besides its contention that the 300-day time limit to file an EEOC is jurisdictional, Defendant asserts no other basis on which to challenge this Court's jurisdiction over Plaintiff's claim. Accordingly, the Court enjoys subject matter jurisdiction over Plaintiff's ADA and ADEA claims and, therefore, does not dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### 2. Plaintiff's February 12, 2008 Letter to the EEOC as a Timely Amended Charge

The question before the Court now becomes whether Plaintiff's Complaint should be dismissed under Rule 12(b)(6). Plaintiff argues that its February 12, 2008 letter to the EEOC constituted a timely filed amended charge.

While the federal regulations governing ADEA claims and amendments are substantially the same as those governing ADA claims, the Court is mindful of the instances where the regulations differ and therefore sets forth the regulatory framework for both statutes below. *See Fed. Express Corp v. Holowecki*, 128 S. Ct. 1147, 1153 (2008).

Under the federal regulations governing ADA claims, a charge must be in writing, signed, and verified. 29 C.F.R. § 1601.9. "Verified" means "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." *Id*. § 1601.3(a).

The regulations governing ADEA claims define a charge as "a statement filed with the [EEOC] by or on behalf of an aggrieved person which alleges that the named prospective defendant

has engaged in or is about to engage in actions in violation of the [EEOC]." *Id*. § 1626.3. The charge must be in writing, name the prospective respondent, and generally allege the discriminatory act. *Id*. § 1626.6.

A charge is sufficient under the regulations governing either ADA or ADEA claims "when the [EEOC] receives from the [claimant] a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id*. §1601.12(b); *see also id*. §§ 1626.8(b), 1626.6.[2] Recently, in *Federal Express Corp v. Holowecki*, the Supreme Court clarified the requirements to make a charge under the ADEA, when it held that "[i]n addition to the information required by the regulations . . . , if a filing is deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 128 S.Ct at 1157–58.

Under the regulations governing the ADA, amendments to a charge are permitted "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify the allegations made therein." *Id*. § 1601.12(b). Similarly, the ADEA regulations allow amendments to clarify or amplify allegations made within the charge. *Id*. § 1626.8(c). These "amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was

---

[2] The regulations also provide that a charge under either the ADA or the ADEA "should" contain the following: (1) "The full name, address, and telephone number of the person making the charge"; (2) "The full name and address of the person against whom the charge is made"; (3) "A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful practice"; (4) "the approximate number of employees of the [R]espondent"; and (5) "A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a state or local agency charged with the enforcement of fair employment practice laws." 29 C.F.R. §1601.12(a); *see also id*. § 1626.8(a).

9

first received." *Id*. at §§ 1601.12(b), 1626.6.

Defendant argues that the Amended Charge naming Defendant as a respondent was filed beyond the 300 day time period and therefore was too late. Defendant also argues that adding a new respondent, like Defendant, is a substantive, as opposed to a technical change that cannot relate back to the original filing. Plaintiff, on the other hand, argues that its February 12, 2008 Letter constituted a timely amended charge. Additionally, Plaintiff argues that if the Court deems the February 12, 2008 Letter as insufficient to serve as an amended charge, Plaintiff's Amended Charge, nevertheless, should be tolled in light of the fact that the EEOC is to blame for Plaintiff's failure to timely amend the charge to include Defendant.

At the onset, the Court notes that Defendant does not contest or otherwise challenge the validity of the Original Charge filed on September 5, 2007. The only issue of contention is that it did not list Defendant as a respondent.

The Court next addresses the impact of the February 12, 2007 Letter: first, whether it represents a valid amendment to the Original Charge; and second, whether the letter represents a valid charge on its own, which was later verified by the Amended Charge.

As to the first issue, the Court finds that the February 12, 2007 Letter represents a valid amendment to the Original Charge. Unlike the cases cited by Defendant, where the claimants attempted to add wholly new parties,[3] Plaintiff attempted only to provide the name of the successor

---

[3] *Rivera v. Dept. of Justice*, 821 F. Supp. 65, 70 (D.P.R. 1993) (holding that the addition of a new party to a charge is a substantive amendment as opposed to a technical amendment); *Rideway v. Int'l Bros of Elec. Workers*, 466 F. Supp. 595, 598 (N.D. Ill. 1979) (same); *Fuchilla v. Prockop*, 682 F. Supp. 247, 256 (D.N.J. 1987) (same); *but see*, *Manning v. Chevron Chem. Co.*, LLC, 332 F.3d 874 (5th Cir. 2003) (finding that amendments of EEOC claims to add a entirely new theory of recovery may relate back to the original charge when the facts supporting both the amendment and the original charge are essentially the same).

of an already named respondent. Under the ADA regulations, this error was technical and not substantive as the Defendant argues. Similarly, under the ADEA regulations, adding Defendant as a party here, under these specific set of facts, is properly characterized as a clarification of the allegations of the Original Charge.

According to Defendant, the owner of Defendant, Michael B. Grattan, had been the manager of Oldco for more than twenty years and had also been a five-percent owner of Oldco. (Def.'s Br. 2 n.1). When the principal owner of Oldco passed away, Grattan purchased the assets from the deceased principal's estate. (*Id.*). In addition, Defendant admits that "Oldco responded to the charge, denying any discrimination, and pointing out that it had ceased all business operations and sold its operating assets to [Defendant]." Therefore, from Defendant's own admissions, there appears to have been enough of a continuation of Oldco[4] by Defendant such that Defendant cannot now avoid liability for Plaintiff's claims merely because Plaintiff initially named Oldco as the respondent and then later notified the EEOC of its mistake when it learned Defendant should be

---

[4] Here, while the facts certainly have not yet been fully developed, Defendant's own admissions on the matter appear to indicate that its purchase of Oldco's assets resulted in a "mere continuation" of Oldco under Michigan law.

> A prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operation, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. . . . [A]n additional principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

*Foster v. Cone-Blanchard Machine Co.*, 460 Mich. 696, 703–04 (1999).

11

added as a respondent.

Although not controlling here, this conclusion comports with Federal Rule of Civil Procedure 15(c)(1)(C), which allows an addition of a party to the pleadings to relate back if the party (1) was involved in the same conduct, transaction, or occurrence as the set forth in the original pleading, (2) received notice of the action such that it will not be prejudiced in defending on the merits, and (3) "knew or should have known that the action would have brought against it, but for a mistake concerning the proper party's identity."  Clearly, Defendant was involved in the conduct that gave rise to Plaintiff's claim.  Although far from conclusive, Grattan's involvement in the management of Oldco and his purchase of all of its assets make it likely that Defendant, or at the very least Grattan, had notice of Plaintiff's claims and knew or should have known that but for Plaintiff's failure to include Defendant, Defendant would have been named as a party as well.  *Cf. Budlong v. Laventhol & Horwath*, 51 F.E.P. 783 (M.D. Fla. 1988) (finding that a defendant, who was not named on the EEOC charge but who served a equity partner in the company that was named, was a proper defendant in the Title VII action because he was the target of the charge and had actual knowledge that Plaintiff was considering filing a charge); *Drummer v. DCI Consulting Corp.*, 772 F. Supp. 821, 828 (S.D.N.Y. 1991) (finding that a defendant, who was not named on the EEOC charge but who served as president of the company that was named, was a proper defendant in the Title VII action because his actual knowledge of the charge could be inferred).

Furthermore, Plaintiff filed the Original Charge before he was represented by counsel.  The attempted amendment was made through his attorney.  In assessing the content of the original charge for the purposes of applying the EEOC regulations pertaining to amendments, courts "keep in mind that charges are most often drafted by one who is not well versed in the art of legal

description. Accordingly, the scope of the original charge should be liberally construed." *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 965 (3d Cir.1978) (citing *Tillman v. City of Boaz*, 548 F.2d 592, 594 (5th Cir. 1977)); *accord Holowecki*, 128 S. Ct. at 1158.

Because the Court finds that February 12, 2007 Letter represents a valid amendment to the Original Charge, it not need not determine whether the February 12, 2007, on its own, constitutes a valid charge.

Accordingly, for the several reasons set for above, the Court denies Defendant's motion to dismiss Plaintiff's Complaint for Plaintiff's alleged failure to add Defendant as a respondent before the 300 day administrative filing time period expired.

### C. Sufficiency of Plaintiff's Allegations of Disability

Defendant submits that Plaintiff omitted statutorily-required allegations from his Complaint and that as a result, his Complaint should be dismissed under Rule 12(b)(6). Specifically, Defendant argues that Plaintiff has failed to state a claim for disability under the ADA by failing to allege that he has a physical or mental impairment that substantially limits a major life activity and under the ADEA by failing to allege that he was replaced by a younger worker.

#### 1. Plaintiff's ADA Claim

Plaintiff seeks relief under the ADA, 42 U.S.C. § 12101, *et seq.* Specifically, Plaintiff claims that Defendant violated the ADA when it failed to retain Plaintiff because of disability—bone deterioration in his hip—despite his ability to perform his job with or without reasonable accommodation.

Congress enacted the ADA in an effort to "eliminate discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA prohibits an employer from discriminating against

13

a "qualified individual" because of his or her "disability." *See* 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[5] A "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A plaintiff alleging discrimination in violation of the ADA must allege facts which establish that: "(1) he is an individual with a disability; (2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodations; and (3) he was discharged solely by reason of his handicap." *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)(citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Despite not having been given specific authority to do so, the EEOC has issued regulations to provide guidance on the interpretation of disability by defining the three elements of disability: (1) "physical or mental impairment," (2) "substantially limits," and (3) "major life activities." *See* 29 CFR § 1630.2(h)–(j) (1998). Under the regulations, a "physical impairment" includes "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory

---

[5] It is important to note that Congress recently amended the ADA's definition of the term "qualified individual with a disability" as a part of the ADA Amendments Act of 2008. Pub. L. No. 110-325, § 4, 122 Stat. 3553 (2008). Interestingly, in the bill, Congress explicitly instructed the Courts to construe the definition of disability "in favor of broad coverage of individuals" under the ADA. Pub.L. No. 110-325, § 4(4)(A). But since the amendments to the ADA are not effective until January 1, 2009, the Court need not apply the amendments to the present case, as the complained-of-action took place before the law took affect. *See Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).

(including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *Id*. § 1630.2(h)(1). "Substantially limits" means, *inter alia*, "unable to perform a major life activity that the average person in the general population can perform;" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id*. § 1630.2(j). Finally, "major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id*. § 1630.2(i).

Defendant contends that Plaintiff has not alleged that he was disabled under the ADA—i.e., having a physical or mental impairment that substantially limits one or more major life activities. In addition, Defendant argues that even assuming Plaintiff's disability claim relates to the major life activity of working, Plaintiff's claim should nonetheless fail because he did not allege that he was unable to work in a broad class of jobs, as is required under *Sutton v. United Airlines Inc.*, 527 U.S. 471, 491, (1999).

Here, Plaintiff claims that he suffers from bone deterioration in his hip, which caused him to suffer from a great deal of pain and to walk with a limp and prevented him from standing for long periods of time. Clearly, Plaintiff has adequately alleged that he has a physical impairment, namely bone deterioration in his hip. In addition, construing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that his bone deterioration substantially limits at least one major life activity (e.g., walking, performing manual tasks, working, or even standing) by asserting that he had difficulty standing for long periods of time and that he walked with a limp because of the severe pain in his hip.

Defendant's attempt to confine the effect of Plaintiff's alleged impairment to the major life activity of working is not be well-taken. While Defendant's assertion that *Sutton* requires a heightened pleading standard when the major life activity under consideration is that of working, *Sutton*, 527 U.S. at 491, as set forth above, Plaintiff's Complaint contains allegations pointing to the limitation of more major life activities than simply working.

Finally, Plaintiff's revelation in his response brief that the Social Security Administration deemed Plaintiff disabled under its rules on May 11, 2007—the day he was terminated by Defendant—does not necessarily defeat his ADA claim, as Defendant argues. In *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797–98, the Supreme Court held that:

> [P]ursuit, and receipt, of [Social Security Disability Insurance ("SSDI")] benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA. Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could "perform the essential functions" of her previous job, at least with "reasonable accommodation."

Thus, at this stage in the litigation, Plaintiff's ADA claim should not be dismissed merely because he is receiving SSDI benefits.

Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's disability claim under the ADA.

### 2.   Plaintiff's ADEA Claim

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress enacted the ADEA "to promote employment of older persons based on their ability rather

16

than age; [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. § 621(b).

Absent direct evidence of discrimination, a plaintiff may establish a prima facie violation of the ADEA by alleging: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008).

Defendant centers its argument for dismissing Plaintiff's ADEA claim around the fourth element—that the plaintiff was replaced by a younger worker. In his Complaint, Plaintiff alleges that "[a]fter [Defendant] failed to hire Plaintiff, it continued to seek job applicants and, in fact, hired two employees aged in their 20's and 30's." (Compl. ¶ 27).

Construing the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has pled the fourth element of a prima facie case under the ADEA. Although Plaintiff does not explicitly allege that he was replaced by a younger worker, his Complaint can be read rather to reach such a conclusion. Plaintiff claims that after Defendant failed to hire *him*, it continued to seek job applicants, eventually hiring two younger employees, who were roughly twenty to forty years of age. Thus, Plaintiff avers that the younger workers were hired instead of Plaintiff. Given the somewhat unusual facts comprising Plaintiff's claim—that Plaintiff was fired by Oldco and then not subsequently rehired by Defendant—Defendant's alleged hiring of younger job applicants after it decided not to hire Plaintiff back is sufficient to establish the fourth element of Plaintiff's prima facie case. This conclusion is supported by case law from the Sixth Circuit as recent as 2006 that worded the fourth element of an ADEA as follows: that "the *successful applicant* was substantially younger than the plaintiff." *Preston v. Clayton Homes, Inc.*, 167 Fed. Appx. 488, 493 (6th Cir.

17

2006) (unpublished) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998)); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) ("(4) a person not of the protected class replaced, or was *selected over*, the plaintiff.")

Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's disability claim under the ADEA.

### III. CONCLUSION

For the reasons stated, the Court DENIES Defendant's Motion to Dismiss Plaintiff's Complaint.

**SO ORDERED**.

          S/Paul D. Borman
          PAUL D. BORMAN
          UNITED STATES DISTRICT JUDGE

Dated: March 3, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 3, 2009.

          S/Denise Goodine
          Case Manager