# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TERRY SMITH,

            Plaintiff,                      Case Number: 08-CV-14314

v.                                    JUDGE PAUL D. BORMAN
                                         UNITED STATES DISTRICT COURT

GRATTAN FAMILY ENTERPRISES, LLC,
d/b/a UNI-BOND BRAKE, LLC

            Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT GRATTAN FAMILY ENTERPRISES, LLC d/b/a UNI-BOND BRAKE, LLC'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

Now before the Court is defendant Grattan Family Enterprises, LLC's ("Defendant's") July 15, 2009 Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. No. 24.) A hearing on this matter was held on October 16, 2009. For the following reasons, the Court GRANTS Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

## I.      BACKGROUND

This action arises from Plaintiff's allegations that Defendant wrongfully terminated his employment in violation of both the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et. seq ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq ("ADEA"). Plaintiff was employed for more than 20 years as a factory worker for Uni-Bond Brake,

Inc. ("Uni-Bond") (Def.'s Mot. Ex. 5, Smith Dep. 6:20-23, June 16, 2009.)[1]  Plaintiff was laid off

in 2006 for some fourteen months and recalled to work in early 2007.  (Smith Dep. 12:20-13:1.)

Sometime in March 2007, Uni-Bond transferred Plaintiff from his position as a welder to a position

as a press operator.  (*Id.* ¶ 11).

On May 11, 2007, Defendant purchased the assets of Uni-Bond, along with the assets of a

related company, Uni-Bond Lighting & Safety Products, L.L.C. ("Lighting").[2]  (Def.'s Mot. Ex. 1;

Ex. 3 p. 3, Defendant's Answers and Objections to Plaintiff's Affirmative Defenses & General

Defense Interrogatories ("Def.'s Resp. First Interrog.").)  After the asset purchase, Defendant

continued to operate the two former businesses and rehired most of the former employees of both

entities.  Plaintiff was not rehired.  (Def.'s Mot. Ex. 3 p. 2.)  On September 5, 2007, Plaintiff timely

filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination, which

was assigned charge number 471-2007-03605 ("Original Charge").[3]  The EEOC dismissed the

proceedings against Defendant (as well as a related proceeding against Plaintiff's Union) and mailed

Plaintiff a Right to Sue Letter on July 9, 2008.  On October 9, 2008, Plaintiff filed this suit.  (*See*

Dkt. No. 28 p. 3 n.3.)

Plaintiff claims that he began experiencing hip pain in early 2007, that he had difficulty

working overtime, and that Defendant's decision not to rehire him was based upon this "disability."

---

[1] All references to deposition testimony in this Opinion are to the full copies of those transcripts which appear as various exhibits to Defendant's motion for summary judgment.

[2] In their briefs, the parties refer to Uni-Bond and Lighting collectively as "Oldco" and Defendant as "Newco."

[3] The timeliness of Plaintiff's EEOC Charge was the subject of an earlier Order of this Court, which concluded that Plaintiff had timely filed his charge with EEOC against this Defendant.  (Dkt. No. 28.)

Additionally, Plaintiff argues that Defendant did not rehire him because he was 59 years old. Defendant responds that its sole reason for not rehiring Plaintiff was his long history of attitude problems and difficulties getting along with his co-workers and that it never discriminated against him because of his age or his hip pain.

### A.  Plaintiff's Employment History

The evidence shows that Plaintiff was perceived by his co-workers and his superiors as having "an attitude problem."  Lisa Moore, the head of human resources and purchasing for Defendant, worked with Plaintiff at Uni-Bond starting in April, 1987.  (Def.'s Mot. Ex. 6, Moore Dep. 6:5-14, June 25, 2009.)  Ms. Moore testified that in 2006, when Plaintiff was laid off for several months, he visited Ms. Moore at the plant and told her that he "knew the reason he was laid off and that it was because of him, his attitude, his demeanor." (*Id.* 35:8-13.)  Ms. Moore testified that she asked Plaintiff if he was going to "mend his ways" and he said that "he had done some soul searching" and "realized that he had some issues with people" and that  "he was going to try to get along with everyone." (Id. 35:13-19.)  Ms. Moore testified that for a while after his rehire in early 2007, Plaintiff did appear to change but that soon he was back to his old attitude. (*Id.* 35:20-36:12.)  Plaintiff testified that he recalled having a discussion with Ms. Moore about getting along with people in his new position but he did not recall the specifics.  (Smith Dep. 15:11-21.)

Ms. Moore testified that the decision not to rehire Plaintiff when Defendant purchased the company in May 2007 was based upon his poor attitude, his difficulty getting along with his peers, his supervisors and his general disrespect for his supervisor, Mr. Jimmy Evans.  Ms. Moore highlighted the fact that even Mr. Evans, who gets along with everyone, said he would be ok with Plaintiff not being rehired. (Def.'s Mot. Ex. 6, Moore Dep. 16:12-17:3)  Mr. Evans confirmed Ms.

Moore's testimony about Plaintiff's attitude.  He stated that Plaintiff would "look at you, like it would go through you."  (Def.'s Mot. Ex. 7 Evans Dep. 14:14-25, June 25, 2009.)  Mr. Evans testified that he was asked for input on the decision not to rehire Plaintiff and he told the group that Plaintiff had a bad attitude.  (Evans Dep. 21:5-15; 34:15-19.)  Ms. Moore testified that it was well known that Plaintiff was a "trouble-maker" who had "a lot of antagonistic relationships with people," and was generally "an unhappy person who enjoyed making other people unhappy." (Moore Dep. 17:6-18:9.)

A fellow employee, Marja Notsi, also testified that Plaintiff had a very bad attitude, and a bad temper. (Def.'s Mot. Ex. 8 Notsi Dep. 6:10-7, June 25, 2009.)  Ms. Notsi testified that Plaintiff would scream at employees but then would tell her he was going to try to be different.  (Notsi Dep. 7:21-8:1.)  In answers to interrogatories, Defendant testified that many co-workers complained about Plaintiff's attitude and that Plaintiff's personnel file reflects that a meeting was requested by the employees  at one point to complain about the way Plaintiff was treating them.  (Def. Mot. Ex. 9 Def.'s Resp. to Pl.'s Second Interrog. No. 14; Def.'s Mot. Ex. 14.)  Notes of the meeting, held on June 18, 1997,  indicate that co-workers complained that Plaintiff used intimidating and abusive language, treated people like dogs, hates his co-workers, broke a phone by slamming it down and said he was going to "shoot Bob & M.G. then himself." Plaintiff was not formally disciplined following these complaints, according to Ms. Moore, because the union contract only allowed punishment for insubordination and Plaintiff "never crossed that line."  (Moore Dep. 18:13-19:2.) Mr. Grattan, Defendant's owner and principal shareholder, also testified that Plaintiff had "problems with other members of the workforce in the plant" and recalled one instance in particular where a group of eight to ten employees came to their supervisor and asked that Plaintiff be removed from

4

the area where they worked.  (Def.'s Mot. Ex. 4 Grattan Dep. 10:24-11:25, June 25, 2009.)  Finally, the former union steward from Uni-Bond, Curtis VanDeVenter, testified that Plaintiff was an irritable person and had several complaints against him from co-workers.  (Def.'s Reply Ex. A 13:20-14:20.)

   Plaintiff testified in his deposition, in response to the question whether he recalled having problems with his co-workers, that he "imagine[d] from time to time it happens with everybody." (Smith Dep. 15:2-10.)  In general, he did not specifically recall these confrontations, but he did not deny them.  (Smith Dep. 50:1-52-4.)  The only evidence, other than his own testimony, that Plaintiff offers to counter this substantial testimony is the Affidavit of Frank Parise, a co-worker from Uni-Bond, who also was not rehired by Defendant in May 2007, who testified simply that Plaintiff "kept to himself and did not cause trouble with his coworkers."  (Pl.'s Resp. to Mot. Ex. B.)

### B.  Plaintiff's Medical History

   Plaintiff states in his Complaint that he was experiencing significant hip pain due to "bone deterioration" which caused him to limp and made it difficult for him to work "longer than his scheduled eight hour shift."  (Pl.'s Compl. ¶¶ 12, 13.)  Additionally, Plaintiff claims that he has difficulty tying his shoes and sometimes has difficulty putting clothes on his left side.  (Smith Dep. 89:12-15.)  All of Plaintiff's relevant medical history comes from visits he has had to the VA Hospital, which Plaintiff first visited in January, 2007.  (Smith Dep. 11:18-25.)  At that time, Plaintiff complained of gout and sinusitis, but did not complain of hip pain.  (Smith Dep. 12:10-16; Def.'s Mot. Ex. 12, VA Medical Records at 2.)  The first time Plaintiff claims to have experienced leg pain that affected his ability to work was in early 2007.  (Smith Dep. 17:16-24.)  Plaintiff testified in his deposition that the pain in his leg would start to bother him after he had been working

his full eight hour shift and that the problem arose when he was asked to work overtime. (Smith Dep. 18:16-18; 19:13-19; 48:4-10.) He testified that he told his supervisor, Jimmy Evans, that he couldn't work overtime because his leg was giving him problems. (Smith Dep. 20:14-21:5.) While Evans does not specifically recall this conversation, he stated that Plaintiff may have said something about not wanting to stand so much on the job but that Evans would have required Plaintiff to provide a doctor's note before doing anything to address Plaintiff's complaints. (Moore Dep. 36:6-21.) Plaintiff testified that in spite of his discomfort, he was always able to work a full eight hour shift. (Smith Dep. 19:13-19.) None of Plaintiff's former supervisors or co-workers ever perceived him as having any physical disability. (Def.'s Mot. Ex. 3, Def.'s Answers to First Interrogs.)

After the May 11, 2007 decision not to rehire Plaintiff, Plaintiff returned to the VA Hospital and this time obtained x-rays of his hip. (Smith Dep. 28:17-24; Def.'s Mot. Ex. 12, VA Medical Records at 8.) The medical records indicate that Plaintiff had an orthopaedic consult on June 22, 2007 where he complained of hip pain for the past 3 years and reported that he had difficulty getting in and out of his car and tying his shoes. (Def.'s Mot. Ex. 12, VA Medical Records at 9.) Plaintiff's x-rays showed a moderate degree of osteoarthritic changes involving the left hip joint with narrowing of the joint spaces. (*Id.* at 10.) Plaintiff was advised to take motrin and to bike and swim, and to return for an injection if the pain became intolerable. (*Id.* 9-11.)

Plaintiff applied for Social Security Disability Benefits in August, 2007, with an alleged disability date of May 11, 2007, but benefits were denied. (Def.'s Mot. Ex. 13, p.1.) In connection with his first application, a medical exam and a Physical Residual Functional Capacity Assessment ("PRFCA") were performed. (Def.'s Mot. Ex. 13, pp. 25-40.) The medical exam, performed by Dr. Christopher Yang, indicated that Plaintiff's "chief complaint was left hip pain once in a while." (*Id.*

25.) Dr. Yang noted that Plaintiff could transfer from standing to sitting, and from standing to lying down independently, with coordination and could:  "[W]alk on heel and toe. He could squat. Cadence and stride were equal and rhythmical. He could do Tandem walk . . . He could button and unbutton his shirt. He could put on and off shoes. . . [and] did not exhibit any sign of incoordination or involuntary movements." (*Id*. 27.) He specifically stated that Plaintiff could: sit, stand, bend, stoop, carry, push pull, button clothes, tie shoes, dress-undress dial telephone, open door, make a fist, pick up coin, pick up pencil, write, squat and rise from squatting, get on and off the exam table, climb stairs. (*Id*. 29.) Dr. Chang also concluded that the clinical evidence did not support the need for a walking aid. (*Id*. 30.)  The PRFCA, completed at about the same time, states that Plaintiff reported that he couldn't reach his left foot to put on socks and shoes but otherwise had no difficulty with personal care. (*Id*. 38.)  The PRFCA concluded that Plaintiff's alleged functional limitations were "somewhat" consistent with the medical evidence in the file. (*Id*.)  The PRFCA recommended the following exertional limitations: Plaintiff can occasionally lift 20 pounds, frequently lift and or carry 10 pounds, stand and or walk about 6 hours in an 8 hour work day, sit about 6 hours in an 8 hour workday, push and pull with his lower extremities in limitation, never balance on a ladder or scaffold but was only occasionally limited in climbing, balancing, stooping, kneeling, crouching, crawling. (*Id*. 34-35.)  Plaintiff testified at his deposition that he didn't recall being tested in all these areas in September 2007 but continued to assert that he has trouble tying his left shoe and has trouble putting clothes on his left side. (Smith Dep. 89:8-15.)

Plaintiff applied again for disability benefits on July 23, 2008, still with an alleged disability date of May 11, 2007. (Def.'s Mot. Ex. 13 p. 8.) Plaintiff confirmed in his deposition that the date of his disability was May 11, 2007. (Smith Dep. 56:18-22.)  In connection with the second

application, which was granted, a second PRFCA was conducted on June 17, 2008, which indicated greater exertional limitations, including a limit on standing to two hours in any workday. (*Id*. 18.)

Ms. Moore testified that she had never seen Plaintiff limp, he never complained to her about hip pain and she never heard anyone discussing his hip pain. (Moore Dep. 37:14-38:6.) Mr. Evans also testified that he had never heard Plaintiff complain about hip pain and never saw him walk with a limp. (Evans Dep. 22:25-23:14.) Ms. Notsi, who worked with Plaintiff for years, testified that she had never seen him limp or heard him complain about pain. (Notsi Dep. 8:2-9.) In their answers to interrogatories, Defendant stated that none of Plaintiff's former supervisors or co-workers ever perceived him as having any physical disability. (Def.'s Mot. Ex. 3 p. 4.)

To rebut this evidence, Plaintiff offers, in addition to his own testimony, the Affidavit of Frank Parise, a co-worker who was also not rehired by Defendant, who stated that he observed Plaintiff limping and using a cane at Uni-Bond. (Pl.'s Resp. Ex. B.)

### C. Plaintiff's Complaints of Pain and Defendant's Policy on Accommodations

Plaintiff testified that he told his supervisor Jimmy Evans in early 2007 that he wanted a position that required less standing and that he did not want to work overtime. (Smith Dep. 20:14-22-13.) Mr. Evans did not specifically recall Plaintiff asking for any type of accommodation but testified that if Plaintiff had asked, Mr. Evans would have requested that he bring in a doctor's note and based upon that they would have accommodated him. (Evans Dep. 24:6-22; 25:11-23.) Ms. Moore testified that normally someone requesting an accommodation would bring a doctor's note to Mr. Evans and then they would accommodate as necessary. (Moore Dep. 23:15-24:6; 40:6-18.) In answer to Plaintiff's second set of interrogatories and requests for production of documents, Defendant responded that Plaintiff knew the process for requesting accommodations because in the

early 1990's Plaintiff was given an accommodation excusing him from working overtime for reasons unrelated to his hip pain (depression). (Def. Mot. Ex. 9 Def.'s Resp. to Pl.'s Second Interrog. No. 10; Smith Dep. 24:13-25:1.)    Plaintiff testified that he never heard anyone at work speak about discriminating against people because of their disabilities.  (Smith Dep.  49:13-17; 53:4-25.)  Mr. Grattan testified that the company never discriminated on the basis of age or disability in its hiring. (Def.'s Mot. Ex. 4 25:17-21.)  Mr. Grattan testified that Plaintiff is the only employee ever to file a discrimination claim.  (Def. Mot. Ex. 9 Def.'s Resp. to Pl.'s Second Interrog. No. 3.)  Ms. Moore also testified that they were currently accommodating a woman,  hired after Plaintiff was terminated, who was undergoing chemotherapy. (Moore Dep. 25:17-26:3.)  Mr. Grattan testified that currently, and multiple times in the past, Defendant accommodated individuals with medical needs.  "I would say at least two-thirds of our current plant workforce has had some kind of disability or affliction in the past." (*Id*. 23:20-24-1.) Mr. Grattan testified that the company policy is to ask people to bring a doctor's note and based upon the medical excuse, the company would accommodate the issue.  He gave several examples and testified that "[a]nybody that comes in with a doctor's note that says whatever the restriction is we do our very best to accommodate that person.   You can come over to our shop and walk through and interview any employee out there and ask them the same question." (*Id*. 25:1-6.)  He mentioned one woman in particular, who was hired after Plaintiff was not rehired, who was in her 60's and on chemotherapy, whom they have accommodated.  (*Id*. 25:17-26-1.)

### D.    **Defendant's Decision to Hire Some, But Not All, Former Employees**

Defendant hired most of the former employees of Uni-Bond and Uni-Bond Lighting.  (Def.'s Resp. Ex. 3, p. 5.)  The former companies together had 42 active and inactive employees on the date

9

they sold their assets to Defendant.  (*Id.*)  Thirty five of the former employees, or 81.4%, were more

than 40 years old on the date of the purchase.  (*Id.* p. 6)  Defendant rehired 33 of these people, or

94.3%.  (*Id.*)  Defendant offered employment to 33 of the total combined workforce of 42, or 78.6%.

Plaintiff was not among those hired.  Of the nine not rehired, two were older than Plaintiff and six

were younger.  (*Id.*)  Ms. Moore testified that four employees have been hired since Defendant

purchased the company in the general classification and all of them were younger than Plaintiff.

(Moore Dep. 31:20-3214.)

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim,

or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a

summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b).

Summary judgment is appropriate where the moving party demonstrates that there is no genuine

issue of material fact as to the existence of an essential element of the nonmoving party's case on

which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  "Of course, [the moving party] always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Id.* at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact

"would have [the] effect of establishing or refuting one of the essential elements of a cause of action

or defense asserted by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)

10

(quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "Rule 56 requires the [non-moving party] to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact."  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## III.   ANALYSIS

### A.   Plaintiff's Claims Under the ADA[4]

---

[4] The Sixth Circuit has held that the ADA Amendments Act of 2008, which became effective on January 1, 2009, Pub. L. No. 110-325, § 8, 122 Stat. 3553, does not apply retroactively to govern conduct that occurred before the effective date of the Act.  *See Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).  Although the Act clearly seeks to broaden coverage under the ADA, specifically overruling certain Supreme Court precedent that has controlled interpretation

Congress enacted the ADA in an effort to "eliminate discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).  The ADA prohibits an employer from discriminating against a "qualified individual" because of his or her "disability."  *See* 42 U.S.C. § 12112(a).  The ADA defines a "qualified individual" as an "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).   In order to state a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) that he is disabled within the meaning of the act; (2) that he is otherwise qualified for the position at issue with or without reasonable accommodation; (3) that he suffered an adverse employment action; (4) that his employer knew or had reason to know of his disability; and (5) that a non-disabled person replaced him or was selected for the same position. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).[5]  If the plaintiff demonstrates a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory basis for its decision.  90 F.3d at 1185.  "If plaintiff fails to establish a predicate fact necessary to

---

of the Act for years, the Sixth Circuit, along with most courts, has rejected application of the amendments to pre-enactment conduct as impermissibly attaching "new legal consequences" to acts committed under different legal parameters. *Id*. at 566-567. Thus, *Sutton v. United Air Lines, Inc*., 527 U.S. 471 (1999), whose reasoning the Act expressly rejects, and its progeny, controls the disposition of this case. *Id. at* 567.

[5] Although the Court in *Monette* stated in dicta that a plaintiff must make a showing that he or she was discharged "solely by reason of his handicap," this phraseology has subsequently been interpreted by the Sixth Circuit to mean that "a plaintiff may not make out a case of discrimination if, besides discrimination, there were other good and sufficient reasons established to discharge the plaintiff." *See Todd v. City of Cincinnati*, 436 F.3d 635, 637 (6th Cir. 2006). Thus, this Court rejects Defendant's suggestion that this Court should apply the "but-for" test, recently adopted in cases proceeding under the ADEA, which rejects this burden shifting framework, in analyzing claims under the ADA. Even in cases applying this new "but-for" standard in ADEA cases, the Sixth Circuit has decided to continue to apply this burden shifting scheme in cases, like this case, that involve circumstantial evidence of discrimination. *See* discussion *infra* at p. 29 n.8.

create the presumption of unlawful intent, technically the 'burden' never shifts to the defendant."
*Id*. If plaintiff does succeed in presenting a *prima facie* case, and the employer offers a legitimate
reason for its decision that is unrelated to plaintiff's claimed disability, plaintiff then bears the
burden of proving that defendant's proffered reason is a pretext.  *Id*. 1185-86.  On this element, a
plaintiff must "produce enough evidence that a jury could reasonably reject the employer's
explanation for its decisions."  *Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996).
Throughout this burden-shifting scheme, plaintiff retains the burden of persuasion at all times.  90
F.3d at 1186-87.

### 1.    Plaintiff has not offered sufficient evidence to create a genuine issue of fact as to whether he was disabled within the meaning of the ADA at the time of the alleged discriminatory act

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially
limits one or more of the major life activities of such individual; (B) a record of such an impairment;
or © being regarded as having such an impairment." 42 U.S.C. § 12102(2).  In the Code of Federal
Regulations, the EEOC has issued further clarification of: (1) "physical or mental impairment," (2)
"substantially limits," and (3) "major life activities." *See* 29 CFR § 1630.2(h)–(j) (1998).   Under
the regulations, a "physical impairment" includes "any physiological disorder, or condition,
cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:
neurological, musculoskeletal, special sense organs, respiratory (including speech organs),
cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine."
*Id*. § 1630.2(h)(1).  The diagnosis of an impairment alone is not enough to establish disability under
the ADA,  as a plaintiff must prove that the impairment substantially limits his individual abilities
in one or more major life activities.  *See Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 198

(2002). "According to the EEOC regulations, 'substantially limit[ed]' means '[u]nable to perform a major life activity that the average person in the general population can perform;' or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Id*. at 195-96 (quoting 29 C.F.R. § 1630.2(j)). "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of [the major life activity] from qualifying as disabilities." *Toyota Motor, supra* at 197.  The guidelines further advise that a court, in considering the substantiality of the claimed limitation, should evaluate: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact or resulting from the impairment.  *Id*. at 196 (citing 29 C.F.R. § 1630.2(j)(2)).  Finally, "major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.  This list is not exhaustive.  For example, other major life activities include, but are not limited to, sitting, standing, lifting and reaching." 29 C.F.R. § 1630.2(I).  Courts "must make an individualized inquiry into whether a plaintiff is disabled." *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (citing *Sutton, supra* at 483).  Thus, a court must determine what effect the claimed impairment has on the life of the individual claiming protection under the Act, not the effect that such an impairment might have in general or on others.

It is difficult to discern exactly what Plaintiff alleges his disability is and the Complaint does little to clarify his claim.  Plaintiff states in his Complaint that he was experiencing significant hip pain due to "bone deterioration" which caused him to limp and made it difficult for him to work

"longer than his scheduled eight hour shift." (Pl.'s Compl. ¶¶ 12, 13.) Although this could be construed as a claim of disability based upon the major life activity of walking and working, Plaintiff's brief indicates that he actually claims much more:

> Plaintiff has asserted that he had difficulty standing for long periods of time, that he walked with a limp because of the severe pain in his hip, has difficulty dressing, bending over, lifting and maintaining balance. Further, prior to his termination and subsequent non-hire by Defendant, Plaintiff was limited in his ability to work. He was experiencing pain to the point that he requested to be transferred to a position that required less standing and also requested that he not be required to perform overtime.

(Pl.'s Resp. 18.) Thus, the Court analyzes the extent of Plaintiff's limitations, caused by his hip pain, in the following "major life activities:" caring for oneself, walking/standing and working. The major life activity of working is analyzed only if a plaintiff is unable to establish a substantial limitation in one of the other major life activities. "[T]he EEOC has expressed reluctance to define 'major life activities' to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* '[i]f an individual is not substantially limited with respect to *any other* major life activity.'" *Sutton, supra* at 492 (quoting 29 C.F.R. § 1630.2(j)) (emphasis in original).

### a. Plaintiff Was Not Disabled in the Major Life Activity of Caring for Oneself

To be considered disabled in the major life activity of caring for oneself, a plaintiff must establish that he is limited "to a large degree" in the life activity of caring for herself. *Sutton, supra* at 491. *See also Richards v. American Axle & Mfg., Inc*., 84 F. Supp. 2d 862, 870 (E.D. Mich. 2000) (granting summary judgment and holding that although Plaintiff, who had a cleft hand, undeniably suffered some limitation in her ability to carry out day-to-day activities in caring for herself, *Sutton* requires a showing of a considerable limitation, which affects this major life activity

to a large degree); *Khan v. Cook County*, 1997 WL 370199, No. 96 C 1113 (N.D. Ill. June 27, 1997) (holding that plaintiff's inability to tie shoes, carry groceries and take out the garbage did not amount to a substantial limitation on a major life activity).

In Plaintiff's first application for disability benefits, submitted on August 15, 2007, Plaintiff claimed that he "can't reach left foot for socks & shoes." (Def.'s Mot. Ex. 13  42.) In a subsequent physical exam ordered in connection with that application, performed by Dr. Christopher Yang, it was noted that on that day Plaintiff in fact could tie his shoes. (*Id.* 29.) Dr. Yang's report states that Plaintiff reported that he could not shovel snow but could clean house, mow lawn, drive and grocery shop. (*Id.* 26.) The PRFCA performed on Plaintiff following Dr. Yang's exam indicated that Plaintiff complained that he couldn't reach his left foot to tie his shoes but otherwise noted no difficulties with personal care and that he cooks, does laundry, dusts drives and shops. (*Id.* 38.)

The only aspect of "caring for himself" as to which Plaintiff claims to be limited is his ability to tie his left shoe and dress his left side. He admits that he is capable of performing all other aspects of his personal hygiene and personal care. This narrow limitation, which is actually contradicted by at least one examining physician who observed Plaintiff tie his shoes, standing alone, does not amount to a substantial impairment of the major life activity of caring for oneself. Plaintiff's evidence is simply too thin to withstand summary judgment on the claim of a substantial impairment of the major life activity of caring for himself because he cannot tie his shoes.

**b. Was Plaintiff Disabled in the Major Life Activity of Walking/Standing?**

To support his claim that his hip pain constitutes a substantial limitation on his ability to walk, Plaintiff must show more than just "some difficulty in walking." *See Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir.1997). "[M]oderate difficulty or pain experienced when walking

16

does not rise to the level of a disability." *Id*. 415.  Plaintiff in *Penny* complained that he limped on occasion, that it hurt to do his job every day and that sometimes it hurt to walk.  *Id.*  The court examined several cases where plaintiffs claimed that arthritic changes amounted to a disability and concluded that even walking with a noticeable limp and having difficulty climbing stairs do not, in and of themselves, constitute disabling conditions under the ADA.  *Id.*  The court was persuaded in part by the fact that the plaintiff there, like Plaintiff in the instant case, was able to "fulfill his job duties in a relatively satisfactory manner (which required a substantial amount of walking) during the period when his ability to walk was allegedly impaired."  *Id.*  Even though plaintiff in *Penny* submitted medical evidence of a partial impairment, the court upheld the district court's grant of summary judgment, concluding that "moderate difficulty walking or climbing stairs does not constitute a disability under the ADA." *Id*. at 416 (citations omitted).  *See also Black v. Roadway Express, Inc.*, 297 F.3d 445, 451 (6th Cir. 2002) ("[M]oderate difficulty or pain experienced while walking does not rise to the level of a disability.").

In September of 2007, when Plaintiff was examined in connection with his first application for benefits, the orthopaedic physician, Dr. Christopher Yang, observed that Plaintiff could walk with a tandem gait, could easily transfer from sitting and lying positions to standing, could sit, stand, bend, stoop, carry, push pull, button clothes, tie shoes, dress-undress, dial a telephone, open a door, make a fist, pick up a coin, pick up a pencil, write, squat and rise from squatting, get on and off the exam table, climb stairs and did not need a device to assist in walking.  Plaintiff claims otherwise and, in the PRFCA performed in connection with Plaintiff's second application for benefits, greater exertional limitations were noted.  However, because Plaintiff's ADA claim fails for other reasons, this Court need not resolve this factual dispute.

17

### c. Plaintiff Was Not Disabled in the Major Life Activity of Working

With respect to the major life activity of working, the term "substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Cotter, supra*, at 598. Moreover, the Sixth Circuit has repeatedly held that an inability to work overtime is not a substantial limitation on the ability to work. *Id*. Where a Plaintiff can at most demonstrate an inability to perform a single job, as opposed to a broad range of jobs, a claim under the ADA will not lie. *Richards*, *supra* at 869-70. As in *Richards*, "Plaintiff's work history belies any argument of being substantially impaired in the life activity of working." *Id*.

Plaintiff offers nothing to rebut the fact that his claims in this regard are undermined significantly by the fact that he actually continued to work a full eight hour day up through the time that he was not rehired. In addition, Plaintiff admitted in his deposition that his hip pain only troubled him when he had to work overtime. Also, the record establishes that Plaintiff had a history of refusing overtime, for reasons completely unrelated to hip pain. (Moore Dep. 24:20-25:25; Grattan Dep. 13:19-22.) Plaintiff cannot establish on these facts that he suffered a substantial impairment of the major life activity of working. Additionally, Plaintiff does not even address the fact that he is required to demonstrate that he is restricted from performing a broad range of jobs and not just the job that he lost. Although Plaintiff has been unable to find work since May 11, 2007 (Def. Mot. Ex. 10 Pl.'s Resp. to Def.'s First Interrog. No 9), he in fact applied for many positions,

18

several of which involved working on his feet.  (Smith Dep. 89:18-92:13.) Based on these facts, Plaintiff cannot sustain his burden of establishing that he was substantially limited in the life activity of working.

### d. Plaintiff Was Not Disabled at the Time of the Alleged Discriminatory Act

Assuming Plaintiff could establish a substantial limitation on one of these major life activities, Plaintiff must also establish as part of his *prima facie* case that his claimed disability existed at the time of the alleged discriminatory act.  "In order to recover on any of her ADA claims, Kocsis must first establish as part of her prima facie case that she was a 'qualified individual with a disability' *at the time of the discriminatory act*."  97 F.3d at 884 (emphasis in original).  In *Kocsis*, the court of appeals rejected the district court's finding that plaintiff satisfied the disability requirement because she was "*presently* under the diagnosis of [MS]."  *Id*. 884 n. 13 (emphasis in original).  The court of appeals held that the district court's premise was erroneous because the plaintiff did not establish that she was under the diagnosis at the time that the adverse action occurred.  *Id*.   The court reached a similar conclusion in *Moen v. Genessee County Friend of the Court*, 2009 WL 1953056, No. 08-cv-12824 (E.D. Mich. July 6, 2009).  The record in *Moen* was devoid of any evidence that plaintiff's claimed medical condition, tendinitis of her heel, had any significant impact on her ability to walk at the time of the alleged discriminatory act.  Like Plaintiff in the instant case, Plaintiff testified that at the time of the adverse action, it "hurt to walk" and that she "limped on occasion" but in fact she was working at the time and living an active lifestyle.  *Id*. at * 6.  She claimed in her filing with the EEOC that in January of 2008 she became unable to do her job without special shoes.  *Id*. at * 4.  This was a month after the alleged date of discrimination. *Id*. at * 7.  The court held that any disability she suffered at that later date could not support liability

19

for actions that allegedly took place two months earlier. *Id.* Granting summary judgment, the court concluded that: "[N]o reasonable jury could find that Moen's heel condition qualified as a 'disability,' within the meaning of the ADA, at or before the time of the defendants' actions that she complains of." *Id.*

All of the medical evidence that Plaintiff points to in an effort to establish his disability was created after May 11, 2007. When Plaintiff visited the VA Hospital in January, 2007, he did not mention hip pain but complained of gout. The records from that visit do not reflect any observations on the part of the doctor regarding Plaintiff's hip at all. After Plaintiff was terminated and returned to the VA on May 30, 2007, x-rays were ordered and his "disability" first came to light. Plaintiff admitted in his deposition that until this time, he himself had no idea that suffered from this disability. It is difficult to accept Plaintiff's argument that he was "disabled" on May 11, 2007 when even he did not know at that time what the diagnosis might be. Without a diagnosis of disability, Plaintiff was not a qualified individual with a disability under the ADA. *Kocsis*, *supra* at 884 n.13.[6]

Thus, even were Plaintiff able to establish through the medical evidence obtained after his termination that he was substantially limited in one of the major life activities discussed above, the

---

[6] Although Plaintiff does not proceed in this case under the alternate theory that he was "regarded as" disabled, Defendant argues in its brief against such a claim. (Def.'s Mot. 19.) If Plaintiff did make such claim it would fail. The most that Plaintiff can claim is that Defendant knew that Plaintiff had pain in his leg, based upon his claim that he told Jim Evans that his leg was "paining him." However, the fact that Defendant may have perceived that Plaintiff's health problems were affecting his ability to work overtime is not evidence that Defendant regarded Plaintiff as being unable to perform his job due to a diagnosed disability. *Kocsis*, *supra* at 885. *See also Milholland, supra*, 569 F.3d at 567-68 (holding that defendant's general knowledge of plaintiff's health issues did not mean that they regarded her as impaired, especially in light of the fact that she continued to work). Similarly, in the instant case, the very fact that Defendant continued to ask Plaintiff to perform his job as a press operator belies any claim that Defendant "regarded" Plaintiff as disabled.

failure to establish that his disability existed at the time of his termination (or failure to be rehired) would be fatal to Plaintiff's *prima facie* case under the ADA.

### 2. Plaintiff has not offered sufficient evidence to create a genuine issue of fact as to whether Defendant had actual or constructive notice of his disability

Assuming that Plaintiff was able to establish that he had a disability as defined by the ADA, and that it existed at the time of Defendant's decision not to rehire him, he still must establish as part of a *prima facie* case of discrimination, that defendant had notice of the disability. *See Monette, supra* at 1185. Plaintiff correctly notes in his brief that "an employer has notice of the employee's disability when the employee tells the employer that he is disabled." (Pl.'s Resp. 19.) But the cases cited by Plaintiff in fact support the conclusion that when the employee's diagnosis is made after the date of the alleged discriminatory act, the employer cannot be charged with knowledge of the disability. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999). Plaintiff in *DHL* suffered from a nervous disorder that compromised his ability to fly commercial airliners. *Id*. at 446. Although plaintiff told his supervisors that he had lost confidence and was too nervous to fly, and a physician confirmed to plaintiff's supervisor that plaintiff was too anxious to fly, no formal diagnosis of a disability had been made at the time of the alleged discriminatory act. "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id*. at 450 (citing *Gannt v. Wilson Sporting Goods Co*., 143 F.3d 1042, 1046 (6th Cir. 1998)).[7]

---

[7] Although Plaintiff does not claim that Defendant failed to honor a request for an accommodation (a separate basis for a claim of discrimination under the ADA; *see* 42 U.S.C. § 12112(b)(5)(A)), such a claim would fail for the same reasons that defeat Plaintiff's notice argument. The Sixth Circuit has determined that the employee has the initial burden of requesting an accommodation and that the employer need not speculate as to the need for an accommodation. *See Richards, supra* at 870 (citing *Gannt* and *Hammon, supra*). In *Richards*, plaintiff, who had a cleft hand, generally complained to her supervisors about the pain in her arms, and even said that she was having

Also instructive on this issue is the Eleventh Circuit's decision in *Morisky v. Broward County*, 80 F.3d 445 (11th Cir. 1996). *Morisky* involved plaintiff's claim that she suffered from a mental disability and that defendant was on constructive notice of her disability when it rejected her application for a custodian position. The application, which included a written test, advised applicants to notify staff if they needed assistance with the application due to a disability. Morisky's vocational counselor informed the staff that Morisky couldn't read and asked if he could read the application to her. The request was declined and Morisky was not hired for the position. In affirming the district court's grant of summary judgment for defendant, the court cited the reasoning of *Pridemore v. Rural Legal Aid Soc'y of West Central Ohio*, 625 F. Supp. 1180 (S.D. Ohio 1985), a case decided under the 1973 Rehabilitation Act. Pridemore applied for a staff attorney position with the defendant legal services agency. As a supplement to his application, he submitted a letter to members of the defendant's interview committee which did not specifically mention his cerebral palsy disability but which stated that he had been born with some degree of brain damage and that he hoped the committee would not reject him because of this in violation of the Rehabilitation Act of 1973. 80 F.3d 447-448. The defendant did not hire Pridemore, who argued in his suit that the company had constructive notice of his disability based upon the letter. On defendant's motion for summary judgment, the *Pridemore* court concluded that plaintiff's statements in the letter did not raise a genuine issue as to defendant's knowledge of Plaintiff's actual disability, i.e. cerebral palsy.

The court in *Morisky* was persuaded that the same logic applied in the case before it:

---

difficulty doing her job because of the pain, but never claimed that the pain stemmed from a disability. The court held: "Where a plaintiff does nothing more than complain of having difficulties with his or her job, but never tells to [sic] the employer that those difficulties stem from a condition of disability, no claim for failure to accommodate will lie." 84 F. Supp. 2d at 872.

"Morisky concedes that neither she nor Magaz, her vocational counselor, informed any of the employees of Broward County of her specific disability. Instead, she relies upon the information furnished, that she could not read and had taken special education courses, as sufficient to put Broward County on notice of her developmental disorder. While illiteracy is a serious problem, it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment. Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." 80 F.3d at 448 (citation omitted.)

This same logic applies in the instant case.  While osteoarthritis of the hip can unquestionably be a problem, it does not always follow that someone with hip pain is disabled.  In the instant case, Plaintiff claims that he told Jim Evans that he was having pain when he worked overtime and that he wanted to try a different position.  Evans has a vague recollection of Plaintiff talking to him about his trouble working overtime but testified that Plaintiff never substantiated his complaints with a doctor's note.  (Def.'s Mot. Ex.  Evans dep. 36.)  Plaintiff does not dispute that he never provided evidence of his disability nor could he because at this time Plaintiff had not been diagnosed with osteoarthritis of his hip.  Plaintiff testified as follows in his deposition:  "Q: Other than your saying to Mr. Evans my leg is bothering me, did you tell him anything else about what was wrong with your leg or how it was bothering you?  A: I didn't know because I hadn't been able to be seen at the VA Hospital.  Q:  I'm not asking if you do, what I'm asking is what you told him. A: I told him it was paining and I couldn't stand on it much longer.  Q:  Okay.  Is that everything that you told him about your leg? A: Yes."  (Smith Dep. 22:1-13.)

Defendant had a standard procedure of providing requested accommodations when supported

by a doctor's note.  An employer cannot be deemed to be on notice of a "disability" every time an employee complains.  The employer is in no position to make such a determination and, without a formal diagnosis to support such complaints, an employer is not "on notice" of the claimed disability. As the court noted in *Morisky, supra*, vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA.  There is no evidence in this case that defendant knew that Plaintiff's hip pain was the result of a medically diagnosable condition. Plaintiff's own testimony establishes that at the time that Defendant declined to rehire him, even he didn't know about his disability.  To claim that Defendant should nonetheless have divined this is too far a stretch.  Moreover, in this case, the very fact that Defendant continued to ask Plaintiff to work overtime, and Plaintiff continued to work a full eight hour shift, belie any claim that Defendant was on notice that Plaintiff was disabled.  If anything can be inferred from the facts on record it would be that Defendant disbelieved that Plaintiff was suffering from a disability and required medical confirmation.  Accordingly, even assuming Plaintiff can establish that he now suffers from a disability, Plaintiff cannot establish the critical element of his *prima facie* case that Defendant had notice of his disability and failed to rehire Plaintiff "because of" this disability.

>   3.   **Plaintiff has not offered sufficient evidence to create a genuine issue of fact as to whether Defendant's stated reason for deciding not to rehire Plaintiff was a pretext**

Even if Plaintiff were able to establish the elements of a *prima facie* case of discrimination under the ADA, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for deciding not to rehire Plaintiff.  Defendant argues that its decision not to rehire Plaintiff was based solely upon Plaintiff's attitude and demeanor as a long-term employee of Uni-Bond.

24

Defendant offers substantial evidence in support of this claim, through the deposition testimony of Ms. Moore, Mr. Evans, Mr. Grattan, Mr. Vandeventer and Ms. Notsi that Plaintiff had a "bad attitude" and was a trouble-maker who intimidated, and was abusive to, fellow employees. *See* discussion *supra* pp. 3-5.

Because Defendant has articulated a legitimate, non-discriminatory reason for its action, the burden shifts to Plaintiff to prove "by a preponderance of the evidence" that Defendant's stated reasons were not its true reasons but were merely a pretext for a discriminatory action. *Kocsis*, *supra* at 883.

> To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Id*. At all times, "the plaintiff bears the burden of establishing that illegal discrimination took place." *Id*.

Plaintiff in the instant case points to the fact that Plaintiff 's personnel files reveal only one instance of Plaintiff's inability to get along with his co-workers. (Pl.'s Resp. 23.) The only other evidence that Plaintiff offers in rebuttal, in addition to his own testimony in which he does not recall but does not deny these attitude problems, is the one-sentence statement of Frank Parise, a former co-worker also not rehired by Defendant, that Plaintiff kept to himself and did not cause trouble. (Pl.'s Resp. Ex. B Parise Aff. ¶ 10.) This "scintilla" of opposing evidence does not meet Plaintiff's burden on this issue. Defendant has proffered the testimony of Moore, Evans, Grattan, Vandeventer and Notsi, all of whom worked directly with or over Plaintiff. Defendant has also offered the personnel records and the contemporaneous notes of a meeting of employees held specifically to

address Plaintiff's behavioral problems.  Plaintiff does not dispute any of this evidence and offers in rebuttal only the testimony of one co-worker (who may have his own ax to grind with Defendant) who didn't even work in the same area of the plant as Plaintiff.  (Def.'s Reply 5.)   Plaintiff simply has not met his burden of establishing, by a preponderance of the evidence, that Defendant's proffered reason for the decision not to rehire Plaintiff, i.e. bad attitude and related problems with his co-workers, had no basis in fact or was insufficient to motivate the decision not to rehire Plaintiff.

**B.     Plaintiff's Claim Under the ADEA**

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress enacted the ADEA "to promote employment of older persons based on their ability rather than age; [and] to prohibit arbitrary age discrimination in employment . . . ." 29 U.S.C. § 621(b). Absent direct evidence of discrimination, a plaintiff may establish a prima facie violation of the ADEA by alleging: "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008).

While Plaintiff mentions "age" as having partially motivated the Defendant's decision, and complains that Defendant hired some younger workers in Plaintiff's former classification, Plaintiff has not established the elements of a *prima facie* case of discrimination under the ADEA.  Defendant correctly states that the recent decision in *Gross v. FBL Financial Servs.*, 129 S. Ct. 2343 (2009) has

26

set a new standard for analyzing claims under the ADEA.  The issue certified for appeal in *Gross* was whether a plaintiff was required to present direct evidence in an ADEA case in order to obtain a "mixed-motive" jury instruction.  *Id*. at 2348.  The majority opinion elected to expand the issue certified to encompass the question of whether "the burden of persuasion ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." *Id*.  The court examined the language and history of the ADEA and concluded that the words "because of," like the words "by reason of" and "based on," mean "but-for" in the context of the ADEA.  *Id*. at 2350. The Court held:  "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer's decision."  *Id*. at 2351.  "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when plaintiff has produced some evidence that age was one motivating factor in the decision."  *Id*. at 2352.

In the instant case, Plaintiff has not established that his position as press operator was filled by a younger person.  Plaintiff avers generally that younger people were hired into Plaintiff's former general classification after Plaintiff was not rehired, but offers no evidence that a younger worker now fills Plaintiff's prior position as press operator.  In fact, Mr. Evans testified that there was no one person assigned to Plaintiff's old position.  (Evans Dep. 36:22-38:11.)  If there is evidence that supports this critical element of Plaintiff's claim of discrimination under the ADEA, Plaintiff was obligated to offer such evidence in response to Defendant's motion.  At the summary judgment stage, the moving party may demonstrate entitlement to a ruling in his favor based upon the absence of evidence to support the non-moving party's case.  *Hammon*, *supra* at 447 (citing *Celotex, supra* at 325.)  Defendant offered evidence that at the same time it decided not to rehire Plaintiff, it also

declined to rehire others who were both older and younger than Plaintiff and that it hired other persons who were both younger and older than Plaintiff.  (Def.'s Mot. Ex. 2.)  Plaintiff does not dispute this but points to the fact that four general classification workers hired since Plaintiff's termination were younger than Plaintiff.  This does not speak to the important question of who now occupies Plaintiff's prior position as press operator, nor does it support a finding of discriminatory animus in Defendant's decision not to rehire Plaintiff.  Defendant offered evidence that approximately 81% of the former employees rehired by Defendant were over 40 years old and that of the nine employees not rehired, two were older than Plaintiff and six were younger.

Moreover, even assuming that a younger worker is currently filling the position of press operator, Defendant has articulated a substantial legitimate reason for its decision not to rehire Plaintiff.  Defendant argues that its decision not to rehire Plaintiff was based solely upon Plaintiff's attitude and demeanor as a long-term employee of Uni-Bond.  Defendant offers substantial evidence in support of this claim, through the deposition testimony of Ms. Moore, Mr. Evans, Mr. Grattan, Mr. Vandeventer and Ms. Notsi that Plaintiff had a "bad attitude" and was a trouble-maker who intimidated, and was abusive to, fellow employees.  *See* discussion *supra* pp. 3-5. Plaintiff has not disputed this proffered evidence with anything other than his own testimony and Mr. Parise's statement that Plaintiff "kept to himself and did not cause trouble with his coworkers."  On these facts, Plaintiff cannot sustain his burden of establishing that age was the "but-for" reason for Defendant's decision not to rehire him.[8]

---

[8] In a recent case interpreting the *Gross* decision, the Sixth Circuit, distinguishing *Gross* as a direct evidence case, has decided to retain the burden-shifting framework utilized in ADA cases in ADEA cases that involve circumstantial evidence.  *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009).  The court in *Geiger* held that plaintiff failed to establish a *prima facie* case and, even if it had, plaintiff had not established that defendant's stated reason was a pretext. *Id*. at 626.

**IV.      CONCLUSION**

For the foregoing reasons this Court GRANTS Defendant's Motion for Summary

Judgment.


IT IS SO ORDERED.


                                    s/Paul D. Borman_____
                                    PAUL D. BORMAN
                                    UNITED STATES DISTRICT JUDGE

Dated:  October 30, 2009

                         CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
October 30, 2009.


                                    s/Denise Goodine_____
                                    Case Manager